[Civ. No. 18728. First Dist., Div. Two. May 19, 1960.]

CLIFFORD GIMBEL, Appellant, v. THOMAS J. LARAMIE, Respondent.

William E. Ferriter for Appellant.

Sedgwick, Detert, Moran & Arnold for Respondent.

STONE, J. pro tem.*—This is an appeal from a judgment in favor of appellant after a trial by the court, sitting without a jury. While stopped at an arterial stop sign, appellant's car was rammed in the rear by a vehicle driven by respondent, who admitted liability. Appellant alleges that the blow to his car snapped his body backward against the seat from which he was then catapulted forward against the steering wheel. This, he and his doctors contend, caused the anterior portion of his heart to be bruised, resulting in a myocardial infarction. Respondent's medical expert testified that there had been no heart bruising or infarction and that appellant's heart condition after the accident resulted from a preexisting arteriosclerosis of the coronary arteries which condition had been exacerbated by the accident. He also testified that appellant suffered a back injury from the original thrust which threw his body backward against the seat. The court found in accordance with the medical testimony of respondent. This finding, appellant contends, resulted in an inadequate award to him of general damages.

The grounds of appeal in this case, other than the alleged insufficiency of the evidence, which we shall consider first, are somewhat unusual. Rather than narrate all of the facts at the outset, we shall relate additional facts pertinent to each specification of error as the particular contention is considered.

Appellant first urges that there is no evidence to support the court's finding that he did not suffer a myocardial

---

*Assigned by Chairman of Judicial Council.

infarction. He cites the record of his injuries, the electrocardiograms, the results of other examinations made by his doctor, together with the hospital records as conclusive evidence of a heart injury. Yet, the respondent's medical expert testified in regard to the same evidence which appellant has pieced together and arrived at a different conclusion. Counsel for appellant cross-examined respondent's doctor in some detail as to his interpretation of the evidence and his opinion deduced therefrom. The court simply found the testimony of respondent's doctor to be more reasonable than that of the doctors produced by appellant. Since respondent's doctor based his expert testimony upon evidence before the court, it cannot be said that the record does not support the court's finding. Cases holding that an appellate court will not attempt to re-weigh the evidence or determine the credibility of witnesses are legion (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]). ▪ The testimony of a medical witness in answer to hypothetical questions based on the facts in the record is sufficient to support a finding contrary to the testimony of other medical witnesses who have seen and examined the patient. (*Sales* v. *Bacigalupi,* 47 Cal.App.2d 82, 86 [117 P.2d 399] ; *Sim* v. *Weeks,* 7 Cal.App.2d 28, 37 [45 P.2d 350].) ▪ The testimony of one credible witness, if believed, is sufficient to support a finding of the court. (*Sales* v. *Bacigalupi, supra;* *Marini* v. *Department of Alcoholic Bev. Control,* 177 Cal.App.2d 785 [2 Cal.Rptr. 714] ; *Berger* v. *Steiner,* 72 Cal.App.2d 208, 214 [164 P.2d 559].)

▪ Appellant's next contention is that the court had no authority to award damages for medical services and expenses and pharmaceutical costs for lesser amounts than his medical witnesses testified were reasonable. Appellant argues that the court was bound to accept the charges which his doctors testified to be reasonable because there was no direct evidence that such charges were unreasonable. In other words, appellant challenges the authority of the court to delete individual items and thereby reduce the total unless there has been testimony that the item is not a reasonable charge. The record reflects that the various services afforded appellant other than the hospitalization, which we shall consider separately, were discussed item by item and in considerable detail on direct examination. On cross-examination also, inquiry was made into the items charged as well as the nature of the services rendered. It is within the province of the court to determine which of the various items received in evidence were reason-

able, which were necessary, and from them to determine the total amount recoverable. The direct testimony of a witness that a particular item was unnecessary or unreasonable is not a prerequisite to the deletion of that item by the court from the total claimed. (*Harris* v. *Los Angeles Transit Lines,* 111 Cal.App.2d 593, 598 [245 P.2d 35] ; *Seedborg* v. *Lakewood Gardens etc. Assn.,* 105 Cal.App.2d 449, 454 [233 P.2d 943] ; *Sills* v. *Soto,* 124 Cal.App.2d 539, 545 [269 P.2d 98].)

 The hospital bill, which was not itemized, presents a different question. The court allowed nothing for hospitalization, finding that "there is no evidence before the court as to the reasonable value of said hospitalization." The only evidence concerning damages by reason of hospitalization was the following stipulation:

"MR. FERRITER: We will stipulate that the hospital bill is $1547.60.

"MR. SEDGWICK: We will stipulate that that was the amount of the hospital bill.

"THE COURT: That was the amount of the hospital bill. All right."

Appellant does not contend that the bill had been paid and thus was some evidence of the reasonableness of the charge. He argues that the stipulation dispensed with the need for proof of either the necessity or the reasonableness of the charges. The foregoing excerpt from the record reflects that appellant asked respondent to stipulate that $1547.60 was the amount of the hospital bill and it is clear that respondent was careful to limit his response and stipulation to the amount. He did not stipulate that it was either reasonable or necessary nor was he asked to so stipulate. It has long been the rule that the cost alone of medical treatment and hospitalization does not govern the recovery of such expenses. It must be shown additionally that the services were attributable to the accident, that they were necessary and that the charges for such services were reasonable. (*Harris* v. *Los Angeles Transit Lines, supra; Guerra* v. *Balestrieri,* 127 Cal.App.2d 511, 520 [274 P.2d 443].) As we have noted hereinbefore, the court reduced the amount charged for and claimed as medical expenses. Such allowance of a lesser amount indicates that the court either did not believe that all of the expenses charged to appellant were attributable to the accident, or that some of the items were not necessary, or that they were not reasonable. This, the court could not do in relation to the claim for hos-

pitalization, since it was not itemized. If the court by reason of evidence adduced during the trial doubted the necessity or reasonableness of any part of the total hospital bill, it had no alternative but to deny the entire amount.

Appellant next contends that the trial court should have disqualified himself upon learning that appellant's principal medical expert witness had been deprived of his license to practice medicine for a period of two years. The disenfranchisement was brought out during the cross-examination of appellant's heart specialist. Counsel for appellant expressed no surprise at the time the evidence was adduced nor at the close of the cross-examination of the witness. Rather, appellant concluded his case in chief, rested, and later after respondent had put on part of his case, the following occurred:

"MR. FERRITER: All right, your Honor. Your Honor please, at this time I would like to reopen the plaintiff's case in chief upon the ground, your Honor, that yesterday I was taken by surprise. I did not know certain developments that occurred when Dr. Bernard Davis was on the witness stand. Without reiterating them, I mean your Honor is aware of what occurred. And naturally, I would have naturally and normally I would have to use his testimony because he was the attending cardiologist. But had I known, I would have produced an additional witness in my case in chief. At this time I would like to reopen so I can put on an additional internal man, cardiologist.

"MR. SEDGWICK: At this time I would like to object to this in this proceeding. It's improper redirect and improper reopening of the case. What counsel may or may not have known about his witness, of course, is no responsibility of the defendant.

"THE COURT: Very well, permission to reopen will be granted."

In his affidavit in support of a motion for a new trial, counsel claimed surprise at the revelation of the doctor's past. His affidavit also alleged something which was not brought out at the trial, namely, that the doctor had also been tried for a criminal offense, a violation of state narcotic laws, and that the trial judge had presided at the criminal trial. Counsel for appellant disqualified the trial judge from hearing the motion for a new trial which was heard by another judge and denied. The matters set forth in appellant's affidavit in support of his motion for a new trial are now urged as grounds for reversal.

Appellant's affidavit was deficient in two respects, and the same defects apply to his arguments on this appeal. First, he has made no showing of surprise which could not have been discovered by the exercise of reasonable diligence. He alleges that knowledge of the doctor's trial on criminal charges and his disenfranchisement were matters locked in the minds of the doctor and the trial judge. Yet, both incidents were matters of public record. Defense counsel learned about the doctor's past and from this, it is evident that appellant could have discovered the same facts about his own witness by the exercise of due diligence. Second, nowhere in the record or in appellant's briefs is there any indication that the trial judge harbored any prejudice toward the witness as a result of the criminal trial. Nor is there any substantiation of appellant's assertion that the trial judge believed the doctor had lied during the criminal trial and, therefore, would not believe his testimony in this trial. There is nothing to indicate that the judge even had a recollection of the criminal trial which occurred some ten years earlier.

Aside from the objections to the sufficiency of appellant's affidavit in support of his motion for new trial, there is another reason why he is not entitled to a reversal. Appellant did not express or claim surprise and he did not move for a mistrial when the cross-examination of Dr. Davis disclosed the suspension of his license for two years. After a substantial period of time for reflection and deliberation, appellant elected to move for permission to reopen his case and present an additional expert witness to cover the substance of the evidence to which Dr. Davis had testified. He thereby waived any claim of surprise or prejudice and he is precluded from raising the issue at this point. The case of *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237 at page 253 [116 P. 513], holds as follows:

". . . In *Sheehan* v. *Hammond,* 2 Cal.App. 371 [85 P. 340], defendant and his counsel, knowing of an asserted irregularity upon the part of the jury, failed to call the court's attention to it, but made their objection after the trial was over, and it was said:—

" 'The defendant cannot be allowed to remain quiet and take the chances upon a favorable verdict, and then raise a point that he knew of and could have raised during the progress of the trial.' This declaration is abundantly supported by our other decisions, as witness: *Monaghan* v. *Rolling Mill Co.,* 81 Cal. 194 [22 P. 590] ; *Wood* v. *Moulton,* 146 Cal. 317

[80 P. 92]; *Doolan* v. *Omnibus Cable Co.*, 140 Cal. 375 [73 P. 1060]. And in other jurisdictions the construction to this effect is so uniform that it is laid down as a rule in the following language in 17 American and English Encyclopedia of Law, page 1206:—

" 'Failure to object to the misconduct of jurors as soon as knowledge thereof is obtained and opportunity to object is presented is a waiver of the right to object, and the objection cannot be thereafter presented, as by a motion for a new trial.' "

 Furthermore, the mere fact that the judge knew of the criminal trial of the doctor and his two years' suspension of license standing alone is not a ground for a mistrial, a new trial, or a reversal of the judgment. From the very nature of the office he occupies and of the judicial processes a judge is required to divorce from his mind many inadmissible matters which are inevitably brought to light during the course of a trial. Improper incidents occur which cannot be guarded against. The law does not assume prejudice on the part of the trial judge. To justify a mistrial, a new trial or a reversal on appeal, an affirmative showing of prejudice which would alter the outcome of the pending litigation is required.

*Estate of Clark*, 93 Cal.App.2d 110 [208 P.2d 737], concerned a will contest, in which it was brought out by the cross-examination of an attesting witness to a will that he was an attorney who previously had been disbarred for two years. The court held that it was error to permit the witness to be asked, over objection, whether he had been disbarred but that the error was not prejudicial. Applicable here is the reasoning of the court which appears at page 116:

"It must be borne in mind that this was not a jury trial, and as was so cogently pointed out in *People* v. *Albertson*, 23 Cal.2d 550, 557 [145 P.2d 7] (quoting from Wharton's Criminal Evidence, § 360, p. 567), ' "It does not reflect in any degree upon the intelligence, integrity, or the honesty of purpose of the juror that matters of a prejudicial character find a permanent lodgment in his mind, which will, inadvertently and unconsciously, enter into and affect his verdict. The juror does not possess that trained and disciplined mind which enables him either closely or judicially to discriminate between that which he is permitted to consider and that which he is not. Because of this lack of training, he is unable to draw conclusions entirely uninfluenced by the irrelevant prejudicial

matters within his knowledge. . . ." ' On the other hand, there is little, if any, justification for the assumption that the trained mind of the trial judge who presided in the case at bar considered the foregoing testimony for any other than what he conceived to be the limited purpose of cross-examination, or was influenced to the prejudice of appellant Geibel by the testimony to which objection is here made."

Appellant's final assignment of error relates to the conduct of the judge in his examination of a photograph which was received in evidence. The appellant and his experts contend that the rear end collision first snapped him backward from which position he was thrust forward against the steering wheel. It is their theory that the abrupt and forceful striking of the wheel caused the heart to strike the chest area resulting in a traumatic myocardial injury. After the case had been submitted for decision, the court called counsel into chambers and advised them that from his examination of the photograph of the steering wheel, he was unable to detect any damage which would indicate that appellant had been thrown forward violently. He further advised them that he had asked a friend, an amateur photographer, to examine the photograph and that the friend had been unable to detect any evidence of damage to the steering wheel. After this revelation, the judge offered counsel an opportunity to have expert photographers examine the picture and testify concerning it. At this point, appellant could have properly moved for a mistrial. The friend of the judge was testifying as an unsworn witness concerning evidence in the case at a time when court was not in session, and he was not subject to cross-examination. Furthermore, the judge told counsel the man was an amateur photographer; yet, he was performing the function of an expert without having qualified as such. This procedure constituted a denial of due process. However, appellant did not move for a mistrial, but elected to request permission to reopen his case. The request was granted but appellant did not call an expert photographer. He called instead the owner of the vehicle who was not the appellant. This witness testified about the damage he found and the repairs his mechanic made to the steering mechanism and the steering wheel. The case was then again submitted for decision.

By electing to reopen his case, rather than move for a mistrial, appellant waived his right to a new trial or to a reversal

of the judgment on that ground. Counsel may not elect to introduce additional evidence to counteract evidence wrongfully received by the court, speculating upon a favorable judgment, and at the same time reserve his objection in the event the judgment should be adverse to him. (*Shain* v. *Peterson,* 99 Cal. 486 [33 P. 1085] ; *Coos Bay Mfg. Co.* v. *California Selling Co.,* 29 Cal.App. 407, 412 [155 P. 817] ; *Estate of Ross,* 171 Cal. 64, 68 [151 P. 1138] ; *Zibbell* v. *Southern Pacific Co., supra.*)

Judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied June 17, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1960. Peters, J., was of the opinion that the petition should be granted.