[Civ. No. 19155. First Dist., Div. Two. Apr. 13, 1961.]

J. T. LUCAS et al., Respondents, v. QUIGLEY MOTOR COMPANY, INC. (a Corporation), Appellant.

Thompson & Thompson and John R. Forde, Jr., for Appellant.

Gregory S. Stout and Harold R. Martin for Respondents.

STONE, J. pro tem.*—Appellant contracted to purchase and respondents to sell an automobile sales and service business, including parts and merchandise, shop equipment, office equipment, furniture and fixtures, and movable parts bins. As a part of the transaction, but by separate document, respondents leased the garage building to appellant. Later, a third document entitled "Addendum to Lease and Addendum to Agreement," was executed by the parties. The sales agreement provided that "With respect to the shop equipment, office equipment, furniture, fixtures, signs and movable parts bins in sections, the same shall be purchased by second party at an appraisal value to be determined by the Tait Appraisal Company, who are a licensed concern. Such appraisal shall be based upon a fair and reasonable price for each item, and on a sound value basis, giving consideration to the fact that the same is to be used in connection with a going automobile concern. . . ." Appellant occupied the garage and operated the business while the appraisal was being made. When it was completed, appellant, dissatisfied with the amount, refused to pay. Respondents filed an action for the sale price fixed by the appraiser; they recovered judgment in a court trial, and this appeal followed.

Appellant advances two principal arguments for reversal: first, that the appraisal should have been set aside as a matter of law because (a) the appraiser was biased toward respondents, and (b) the appraiser was guilty of gross carelessness and mistake; second, that the court erroneously interpreted the written agreement of the parties.

Considering first the attack upon the appraisal, appellant's basic proposition is that the appraiser violated several of the rules of arbitration; that the rules of arbitration apply to appraisers; that if the law is unclear on the point, this court should hold that appraisers are to be held to the same standards as arbitrators. The law of California appears to be clear on the point and contrary to appellant's contentions. The early case of *California Annual Conference of M. E. Church* v. *Seitz,* 74 Cal. 287 [15 P. 839], decided in 1887, holds that the rules of arbitration do not govern a

---

*Assigned by Chairman of Judicial Council.

reference to an appraiser. In 1945, the Supreme Court in *Bewick* v. *Mecham,* 26 Cal.2d 92 at 97 [156 P. 757, 157 A.L.R. 1277] approved the M. E. Church decision and held specifically that Code of Civil Procedure, sections 1280 et seq., governing arbitration, do not apply to agreements calling for an appraisal by a third party (see also *Thompson* v. *Newman,* 36 Cal.App. 248 [171 P. 982]; *Rives-Strong Bldg., Inc.* v. *Bank of America,* 50 Cal.App.2d 810, 814 [123 P.2d 942]; 5 Cal.Jur.2d p. 71). The rule governing an action to set aside an appraisal made by a third party pursuant to a valid contract is summarized in *California Sugar etc. Agency* v. *Penoyar,* 167 Cal. 274 at page 279 [139 P. 671], as follows:

"Nothing is better settled than the rule that where the parties agree that the performance or nonperformance of the terms of a contract, or the quantity, price or quality of goods sold, is to be left to the determination of a third person, his judgment or estimate is binding, in the absence of fraud or mistake [citations]." (See also *Pacific Commercial Co.* v. *Greer,* 129 Cal.App. 751, 756 [19 P.2d 543]; *American Hawaiian Eng. & Const. Co.* v. *Butler,* 165 Cal. 497, 513 [133 P. 280; Ann.Cas. 1916C 44]; *Kinkle* v. *Fruit Growers Supply Co.,* 63 Cal.App.2d 102, 108 [146 P.2d 8]). Thus, the question presented is not whether the appraiser conformed to the rules governing arbitration but whether the appraisal was made fairly and without mistake of a substantial nature.

 Appellant asserts prejudice because the appraisal company designated by the agreement had previously made an appraisal of much of the same property for respondents and that an agent of the company considered the respondents to be his clients. This does not per se make the appraisal fraudulent nor disclose gross mistake. The agreement executed by both appellant and respondents specifically designated Tait as the appraiser. The validity, fairness and accuracy of the appraisal was presented to the trial court as a question of fact. The evidence which appellant cites was heard by the trial court, which found no basis for the charge.

 Furthering his argument that the appraisal was tainted with fraud and undue influence, appellant alleges that respondents communicated directly with the appraiser. Yet, paragraph 13 of the contract, which we shall discuss more fully in connection with appellant's second ground of appeal, made it necessary for respondents to communicate with the appraiser. Paragraph 13 provides: "Second party

agrees to buy all tools, shop equipment, office equipment, furniture and fixtures, and signs, not wanted by first party for his own use at some other location.'' Thus, respondents could hardly be charged with attempting to unduly influence the appraiser by designating the items to be sold and appraised in compliance with one of the terms of the contract. Both respondents and the appraiser were examined at length with respect to communications between them or any attempt by respondents to influence the appraiser and the court found for respondents. This issue too presented a question of fact and we are bound by the finding of the trial court.

Appellant also asserts that Tait appraised the same property some two years earlier; yet, notwithstanding usage and deterioration, a higher price was fixed by the present appraisal. Testimony revealed that during the interim, the property in question had been repaired, modified and made more serviceable which accounted for the increase in the present appraised value of certain items.

In another attack upon the appraisal, appellant produced as witnesses two merchants who had had some experience with used personal property of the type here involved. They adopted a different method of arriving at the present value from that used by the appraiser. Using a different system, quite naturally they differed from the appraisal as to certain items. That difference, however, does not prove the appraisal was unfair, fraudulent or the result of mistake (*California Sugar etc. Agency* v. *Penoyar, supra*). The trial judge approved the appraiser's method of fixing the value of the disputed items and found against appellant on this issue.

We do not believe the different aspects of the appraisal pointed out by appellant which we have discussed herein indicate either fraud or gross mistake. Essentially, they present differences of opinion which are questions of fact for the trial court's determination. The time-honored rule is that an appellate court will not attempt to substitute its judgment for that of the trial court when the question is simply one of weighing the testimony of appellant's witnesses against those of the respondents (*Fifield* v. *Greeley*, 132 Cal.App.2d 512, 515 [282 P.2d 552]; *Anglin* v. *Conway*, 41 Cal.2d 683, 688 [263 P.2d 1]; *Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]). If the testimony of one witness supports the finding and it is not inherently improbable (and the testimony on behalf of respondents was not

improbable), the reviewing court will accept the findings of the trial court (*Francis* v. *City & County of San Francisco*, 44 Cal.2d 335, 340 [282 P.2d 496]; *Sales* v. *Bacigalupi*, 47 Cal.App.2d 82, 86 [117 P.2d 399]; *Marini* v. *Department of Alcoholic Beverage Control*, 177 Cal.App.2d 785, 786 [2 Cal. Rptr. 714]; *Gimbel* v. *Laramie*, 181 Cal.App.2d 77 [5 Cal. Rptr. 88]).

 Appellant's second principal ground of appeal relates to the court's interpretation of the agreement between the parties. Appellant contends that since paragraph 13, quoted above, does not require respondents to sell any specific property mentioned in said paragraph the contract is illusory. Paragraph 13, standing alone, might be susceptible of appellant's interpretation but it constitutes only three lines of an eleven page agreement. That contract, in turn, was executed contemporaneously with a lease between the same parties relating to the same transaction and both of these agreements were subsequently modified by a document entitled "Addendum to Lease and Addendum to Agreement." Not only must the sales agreement of which paragraph 13 is a part be interpreted to give effect to every part of that agreement, if possible, (see Witkin, Summary of California Law, vol. 1, p. 248, § 219 and the many citations therein) but the agreement to sell, the lease and the addendum must be construed together (Witkin, Summary of California Law and authorities, *supra*). The three documents provided for the sale of an automobile sales agency, all parts and accessories, all tires and tubes and all paint and body repair materials, in addition to the items listed in paragraph 13. The lease of the garage building was also involved. When considered as a whole, the agreement is not illusory simply because appellant agreed to give respondents the election to reserve from sale certain items, which were only a part of the total transaction. Furthermore, it would appear that the question is moot since respondents apparently designated the items within paragraph 13 to be included in the appraisal. We gather from the record that controversial paragraph 13 had been completely executed by respondents before suit was instituted which fully justified the trial court in refusing to find paragraph 13 and the contract illusory.

 Appellant assigns as error a finding that a three-wheel service motorcycle, a Studebaker tow truck and certain Studebaker-Packard tools were items of personal property included in the contract of sale. The agreement covered the

sale of an automobile business and the items to which appellant objects were all used in connection with that business. We do not find the trial court's interpretation of the contract unreasonable even though it differs from appellant's interpretation, which is reasonable. ▮ As was said in *O'Hare* v. *Peacock Dairies, Inc.*, 26 Cal.App.2d 345, at page 354 [79 P.2d 433]:

". . . It is well settled that where such an ambiguity exists in a contract, the question of its proper construction is first addressed to the trial judge, and if the conclusion reached by him is not unreasonable it will be supported on appeal. The trial judge having construed the contract in a sense favorable to plaintiffs, and as that construction is not unreasonable, we must accept it here." (See also *Maguire* v. *Lees*, 74 Cal.App.2d 697, 704 [169 P.2d 411]; *Baird* v. *Lindbald*, 75 Cal.App.2d 202, 204 [170 P.2d 488].)

▮ On the other hand, appellant is correct in its contention that the court erred in finding that heaters in the garage building were part of the equipment sold. As pointed out earlier, the contract of sale, lease and addendum are all part of the same transaction and must be construed in the light of each other (1 Witkin, p. 248, § 219, and cases cited therein). The contract of sale does not mention the heaters, but the lease between the parties does, and it specifically requires the appellant, as lessee, to keep them in repair. The heaters were part of the leased premises and it was error to include them among the personal property sold by the contract of sale.

The judgment is reversed only as to the inclusion of the heaters in the sales agreement. The case is remanded to the trial court with instructions to amend its findings and judgment by deleting the heating equipment from the appraisal or sale price of the equipment purchased by appellant. In all other respects, the judgment is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 6, 1961.